[No. B158202. Second Dist., Div. Five. Mar. 13, 2003.]

DULCE MARIE QUINTANA, Plaintiff and Appellant, v.
RAUL GUIJOSA, Defendant and Respondent.

**Counsel**

LACBA Domestic Violence Project, Alisa E. Sandoval; Legal Aid Foundation of Los Angeles and Jane S. Preece for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**Opinion**

**ARMSTRONG, J.**—On January 15, 2002, appellant Dulce Marie Quintana applied for a restraining order and temporary restraining order against her husband, Raul Guijosa,[1] under the Domestic Violence Prevention Act. (Fam. Code, § 6200 et seq.) With her applications, appellant declared that Guijosa was violent and that she feared him. She specified that in November of 2001, he tried to force her into sex and tried to cut her face with a piece of glass "so that no one would want her." When she attempted to get away, he cut her wrist and palm. On December 30, 2001, he damaged the prosthesis in her right eye by hitting it, and on December 31, 2001, from midnight until 2:00 in the morning, he kicked the front door of the home where she was staying and yelled obscenities. He constantly called her, and stalked her. She was afraid that he would hurt her, and as a result had stopped going to her English classes.

The trial court denied the request for a temporary restraining order, and when the matter was called for a hearing on February 7, denied the application without a hearing. The court stated its reasons with reference to a single sentence in the declaration: "our children are in Mexico."

---

[1] He has not filed a brief on this appeal.

The trial court first noted that it had denied the request for a temporary restraining order because "I didn't see, first of all, what she is doing in this country when her children are in Mexico because a mother's primary duty and a father's primary duty is to their children. And I didn't see why should she even be in this court since she should be where her children are." The court told appellant's counsel that all appellant had to do to be free from Guijosa's violence was to "go back to where she came from, where her children are, and be with her children," then ruled that "I'm not going to afford her the benefit of the court's protection when her children are abandoned in Mexico" and that "the court is not going to be a party to condoning or facilitating the abandonment of these children, so I respectfully decline to offer her a restraining order and I am dismissing the case without prejudice."[2]

At that point, Guijosa asked to speak. He told the court that he was the victim, not the victimizer, and the court advised him, too, to return to Mexico.

■ We agree with appellant that the trial court abused its discretion by deciding this case on facts entirely irrelevant to the Domestic Violence Prevention Act, the purpose of which is not to mandate that parents live with their children, but to "prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, § 6220.)

The Legislature has set forth the relevant factors in Family Code section 6300, by providing that a domestic violence restraining order may be issued "if an affidavit shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." "Abuse" is defined. It means intentionally or recklessly causing or attempting to cause bodily injury, sexual assault, or placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another. (Fam. Code, § 6203.)

Given all this, the trial court's comments were not merely legally unsound, but offensive, and ignored the fact that the law affords its protections to all the people described in the statutes, not just those individuals whose choices please the trial court.

Appellant has asked us to remand this case for a hearing on the merits, before a different judicial officer. That is our ruling. (Code Civ. Proc.,

---

[2]There was no evidence that the children had been "abandoned." The only evidence was that they were not living with their parents.

§ 170.1, subd. (c).) We note in closing that if appellant had sought relief through petition for writ of mandate, rather than through an appeal, we would have been able to afford speedier, and perhaps more effective, relief.

### Disposition

The trial court ruling is reversed, and the case is remanded to the superior court for hearing, with direction to that court to assign the matter to a different judicial officer. Appellant shall recover her costs of appeal.

Grignon, Acting P. J., and Mosk, J., concurred.