Filed 3/25/13  Arhip v. Hunt CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SERGHEI ARHIP,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>DAVID MICHAEL HUNT,<br><br>　　　　Defendant and Appellant. | A135035<br><br>(San Francisco City & County<br>Super. Ct. No. FDV-12-809124) |

**I.**

**INTRODUCTION**

Appellant David Michael Hunt (Hunt), proceeding in propria persona, appeals from the issuance of a domestic violence restraining order against him after a contested hearing.  He contends the trial court erred in granting respondent Serghei Arhip's (Arhip) request for the restraining order because the trial court: (1) relied on conduct that does not legally constitute "abuse"; (2) considered evidence not properly filed or served on Hunt; (3) violated his right to equal protection of the law by holding him to a higher standard of evidence than that applied to Arhip; and (4) abused its discretion by imposing a restraining order that was overly restrictive.

Arhip has failed to file a respondent's brief.  Having considered the record below and the arguments raised by Hunt on appeal, we affirm the order.

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUNDS

Arhip filed a request for domestic violence restraining order using Judicial Council form DV-100 on January 4, 2012.[1] In it, Arhip alleged that on January 3, Hunt vandalized Arhip's apartment twice, tried to choke Arhip, bit his neck, and harassed Arhip by "calling [him] constantly." The request sought a stay-away order requiring Hunt to stay at least 100 yards away from Arhip and his dog, Mitch, and a personal conduct order prohibiting Hunt from certain offensive contacts with Arhip including emails, telephone calls, and mailings.

The next day Hunt filed his own DV-100 form seeking essentially the same domestic violence restraining order against Arhip, but also the return of all gifts given by Hunt to Arhip. This request alleged that on January 2, Arhip burned Hunt's right index finger, hit him multiple times with an open hand and closed fist, and threw Hunt against a wall and onto the floor and into furniture causing Hunt multiple bruises and a cut above his eye. Hunt also alleged that an earlier occasion of physical abuse occurred when he was assaulted by Arhip on December 14, 2012.[2]

Accompanying his request for a domestic violence restraining order was Hunt's declaration and seven pages of photographs which he states depict the injuries he received as a result of Arhip's assaultive conduct.

On the same date, Hunt filed a response to request for domestic violence restraining order on Judicial Council form DV-120. In addition to objecting to the specific terms of the restraining order sought by Arhip, Hunt submitted a three-page declaration refuting the factual allegations made by Arhip, and setting forth Hunt's version of events. In essence, Hunt asserted that the events set forth in Arhip's papers "never happened." He denied committing a physical assault on Arhip, and asked that the court disregard Arhip's version of events "in toto" because they all were "fraudulent."

---

[1] All further dates are in the calendar year 2012, unless otherwise indicated.

[2] The calendar year was intended to be 2011.

2

As to Arhip's claim that Hunt vandalized his apartment, Hunt explained that this was a "false embellishment." Instead, Hunt stated that he "accidentally caused the disarrangement of a few items of furniture while [he] was leaving [Arhip's] apartment." Likewise, Hunt denied that any significant property damage occurred while he was leaving, and claimed that he did not cause any damage to Arhip's property on either of the two occasions he was there on January 3. On the last page of this three-page declaration, Hunt recounted a number of incidents occurring earlier in the relationship between himself and Arhip during which Arhip caused Hunt physical and psychological pain.

A hearing on the two competing requests was held on January 25. After administering an oath to both parties, Arhip stated that the information contained in his request was true and correct. In response to the court's invitation to add anything into the record, Arhip stated that Hunt had stolen jewelry from him valued at more than $2,000, had called the "Board of Nursing" in an effort to "get my license," had vandalized Arhip's apartment three times, and had stolen Arhip's prescription medicine. No police report was filed in connection with the stolen jewelry.

A police report was produced by Arhip confirming that an incident had been investigated by the San Francisco Police Department (SFPD) on January 3. Hunt was arrested but the district attorney decided not to prosecute due to lack of evidence.

A neighbor, Francis Farrell, testified at the hearing that he lived in Arhip's building and knew both parties. One evening Arhip called Farrell and asked for his help in ensuring that Hunt left his apartment. Farrell refused to help that night. The next afternoon, Farrell was called again, and this time went to Arhip's apartment to ask Hunt to leave. Hunt left after Farrell called 911. On his way out Hunt deliberately knocked over Arhip's flat screen TV.

Later that same evening Farrell was contacted again by Arhip who asked his assistance in once again getting Hunt to leave the apartment. This time Hunt refused to leave until police arrived. He was asked to leave by Arhip, then Farrell, and later by the police after they arrived. Hunt refused to go.

3

As to his request for a restraining order, Hunt affirmed that everything stated in the supporting papers was true and correct. To refute Hunt's description of his injuries, Arhip responded that Hunt self-inflicted several wounds, including cuts, to make it look as if he had been assaulted by Arhip.

Referring to Arhip's form DV-100, Hunt claimed that nothing alleged in "section C" had ever happened. He denied that he choked or bit Arhip. All of his contacts with Arhip during the disputed visits were amicable. As to the property damaged in Arhip's apartment, Hunt stated that this occurred because he was in a rush to get some of his things out of the apartment, and he was clumsy in the process. Hunt admitted that he contacted Arhip's employer but that he did so "for the public good." He told the employer that Arhip was having problems with alcohol.

As to Arhip's assaultive behavior towards Hunt, Hunt stated that Arhip had bitten him twice, and had injected Hunt with prescription medicine in excessive doses. This resulted in extensive cramping. Arhip also burned Hunt with cigarettes several times, and threatened Hunt's life.

A map of Castro Street was proffered by Hunt to illustrate his concern that Arhip's requested restraining order would interfere with his ability to get his medications, from attending 12-step meetings, and from accessing public transportation.

The trial court then granted Arhip's petition for a restraining order with modifications. These included that Hunt was not to come within 100 yards of Arhip and his residence. The distance was reduced from that requested in order to accommodate Hunt's concern that a longer distance would unduly limit his access to his (Hunt's) pharmacy, 12-step meetings, and other businesses Hunt frequented. The restraining order was not applied to Arhip's dog, Mitch.

As to Hunt's petition for a restraining order, the court denied the request. The court concluded that, based on the police report of the January 3 incident, Hunt was the aggressor that day.

4

## III.

## DISCUSSION

### A. Standard of Review

A temporary restraining order issued under the Domestic Violence Protection Act (DVPA) (Fam. Code, § 6200 et seq.)[3] is of the nature of an order granting an injunction, thus it is "separately appealable." (*McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 357; Code Civ. Proc., § 904.1, subd. (a)(6).)

On appeal from the issuance of a domestic violence temporary restraining order, we apply an abuse of discretion standard of review to determine whether the trial court exceeded the bounds of reason. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413 (*Gonzalez*); *Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079 (*Quintana*).) "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review. [Citation.]" (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505.) " 'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' . . ." (*Gonzales*, *supra*, 156 Cal.App.4th at p. 420, citing *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

The DVPA authorizes issuance of a restraining order "to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220; *Gonzalez*, *supra*, 156 Cal.App.4th at p. 421.) "The Legislature has set forth the relevant factors in Family Code section 6300, by providing that a domestic violence restraining order may be issued 'if an affidavit shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse.' " (*Quintana*, *supra*, 107 Cal.App.4th at p. 1079; *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.) Abuse is defined as intentionally or recklessly causing or attempting to cause bodily injury, sexual assault, or placing a person "in 'reasonable

---

[3] All further undesignated statutory references are to the Family Code.

5

apprehension of imminent serious bodily injury' " to that person or to another. (*Gonzalez*, *supra*, at p. 421; § 6203.)

Because Arhip has failed to file a respondent's brief, we " 'decide the appeal on the record, the opening brief, and any oral argument by the appellant' . . . , reversing only if prejudicial error is shown. [Citations.]" (*Nakamura v. Parker*, *supra*, 156 Cal.App.4th at pp. 333-334.)

## B. The Trial Court Did Not Commit Legal Error by Relying on Conduct Not Subject to the DVPA

Under the DVPA, a restraining order may issue ex parte, after notice and a hearing, or in a judgment either "enjoining specific acts of abuse," "excluding a person from a dwelling," or "enjoining other specified behavior." (§ 6218.) Hunt's initial argument contends that the trial court improperly relied on conduct not constituting abuse under the DVPA. We disagree.

Abuse includes any behavior that has been or could be enjoined pursuant to section 6320. (§ 6203, subd. (d).) The behavior outlined in section 6320 includes "stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party . . . ." (§ 6320, subd. (a).) Thus, the requisite abuse need not be actual infliction of physical injury or assault.

In this case, the trial court accepted as true the claims made by Arhip against Hunt. These included Hunt's admission that he made at least one contact with Arhip's employer in an effort to injure his employment status. In addition, Arhip claimed that he had been assaulted physically by Hunt, that the property in his apartment had been "vandalized" by Hunt, and that he had been harassed by virtue of having to contact law enforcement several times to secure Hunt's removal from Arhip's apartment. Given this record, the evidence of abuse was sufficient to support the trial court's order under the DVPA.

6

**C. In Granting Arhip's Request for a Restraining Order, the Trial Court Did Not Rely on Evidence Not Properly Filed or Served on Hunt**

Hunt's second assignment of error concerns the trial court's consideration of Farrell's testimony, and several documents proffered by Arhip at the hearing, including: (a) a letter from Arhip's therapist; (b) a letter from Arhip's employer; (c) several photographs; and (d) the SFPD police report. He argues that in submitting these documents, Arhip violated applicable San Francisco Superior Court local rules requiring the presubmittal of witness and document lists.

We refuse to consider the merits of this claim of error, because no objections were made in the trial court to Farrell's testimony and the enumerated documents on the ground now raised on appeal. Hunt argues that his pro per status should be considered and we should excuse his failure to object because he was not represented by counsel at the hearing. However, as a pro per litigant, Hunt is entitled to no special treatment in this regard. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 ["[e]xcept when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forego attorney representation"].)[4]

**D. The Trial Court Did Not Violate Hunt's Equal Protection Rights By Holding Him to a Stricter Standard of Evidence Than That Applied to Arhip's Evidence**

Hunt's next contention is that the trial court erred by "requir[ing] Hunt to prove his case by a stricter standard of evidence, while granting Arhip a more lenient standard." There is absolutely nothing in the record supporting Hunt's speculative argument. Essentially, he asserts that the trial court must have held him to a higher standard of proof because his evidence justifying a restraining order against Arhip was so much stronger

---

[4] If we were to reach the merit of this argument, we would reject it. Even assuming Arhip failed to follow applicable local court rules in presenting the disputed evidence, and assuming further the trial court erred in considering it, Hunt has failed to show prejudice. Virtually all of the objected to evidence was cumulative of other evidence presented, including Arhip's own testimony, which the court implicitly found credible.

that Arhip's against him. He also points to several statements made by Arhip during the hearing differentiating his background from that of Hunt in order to create "potentially bias-inducing disparities between himself and Hunt."

While Arhip did attempt to distinguish his background from that of Hunt in an apparent effort to gain sympathy, there is no suggestion whatsoever that the trial court was induced to decide the case based on the disparity in the backgrounds of the parties. In short there is no evidence supporting Hunt's claim that the trial court was biased against him, that his evidence was held to a higher standard of proof than was Arhip's, or that his federal equal protection rights guaranteed by the Fourteenth Amendment to the federal constitution were violated.

### E. The Trial Court Did Not Abuse Its Discretion by Imposing an "Overly Restrictive Order"

Lastly, Hunt argues that, because his federal equal protection rights are implicated by the trial court's decision to grant Arhip a DVPA restraining order, those rights were violated when the court failed to limit the granting of the order to the "least restrictive means." There is no such legal limitation imposed on the trial court's discretion under the circumstances of this case. Not only was Hunt's equal protection right not violated (see section III.D. above), but the court carefully crafted the order with Hunt's concerns clearly in mind about how the distance would affect access to his pharmacy, 12-step meetings, and other places of business he frequented.

For this same reason, we decline his request that we reverse the trial court's order as an abuse of discretion. Indeed, to the contrary, our review of the record leads us to conclude that the trial court was patient and even-handed with the parties, and that the court treated both sides with respect and was careful to exclude from consideration the extraneous facts presented by both sides.

## IV.

## DISPOSITION

The order granting a restraining order in favor of Arhip and denying Hunt a restraining order is affirmed.

8

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
HUMES, J.