Filed 6/28/13  Cole v. Weightman CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| AVALANE COLE, | B240629 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SQ005405) |
| v. | |
| STEPHANIE COLE WEIGHTMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. David J. Cowan, Judge.  Affirmed.


Law Offices of Zolonz & Associates and Adam M. Zolonz for Appellant.


No appearance on behalf of Respondent.


_____

Stephanie Cole Weightman appeals from the Domestic Violence Restraining Order (Fam. Code, § 6200 et seq.) directing her to keep away from and not contact her mother, Avalane Cole. We affirm.

## FACTS AND PROCEEDINGS

In February 2012, respondent Avalane Cole (mother) filed a request for a domestic violence restraining order against her daughter, appellant Stephanie Cole Weightman (daughter). In her supporting declaration filed with her request, mother, who had recently removed daughter as the successor trustee to mother's trust, stated she was 92 years old and suffered from a "fragile heart condition." Following her removal as trustee, daughter had called mother on the phone "repeatedly day and night, comes to my home . . . , threatens to have me declared incompetent and put me where no one will ever find me."[1] Mother also declared that daughter demanded money and other property, and when mother did not comply daughter "screams at me and stomps around in an angry rage." Mother stated "After every interaction with [daughter] I feel a severe pain in my chest and have to take nitroglycerine tablets to prevent a heart attack. I am terrified my daughter will hit me or kill me intentionally or cause me to have a heart attack during one of her frequent angry outbursts." Mother requested that the court issue a restraining order directing daughter not to, among other things, harass, attack, or threaten mother, and not to contact mother, directly or indirectly, by any means, including by telephone. Mother additionally requested that the court order daughter to stay at least 100 yards from mother, mother's home and car, and medical care facility. Daughter opposed mother's request for a restraining order.

At the court hearing on mother's request, the court received into evidence transcripts of four phone messages daughter had left on mother's answering machine which mother considered harassing or threatening or both. In these profanity-sprinkled

---

[1] Mother also alleged daughter had stolen mother's personal property from mother's home, but the trial court declined to make any specific findings as to that allegation's veracity.

2

messages, daughter, among other things, called mother a liar, saying "you don't remember what you said anymore and . . . you're a liar, you're a hundred percent liar." Daughter also called mother "insane. You are really insane." Mother further testified at the hearing that daughter called mother's hospital room while mother was recovering from surgery and told mother that daughter had taken an overdose of pills in an attempt to kill herself. Alarmed, mother contacted police, who could not confirm daughter's claim. Mother testified, "I tried to contact the police. I gave them [daughters's] home address. I gave them all the information so they could locate her. The police said they had no record of her there, that they had no way of confirming my anxiety and whether or not she had committed suicide." Mother also testified that daughter's gun collection and threats to have mother institutionalized frightened mother. Mother testified: "Q. Did your daughter ever threaten to have you put in an institution? [¶] A. Just about every time she called me, that would be the ending of her conversation. [¶] Q. And what else did she say about putting you in an institution? [¶] A. Well, even more than that, putting me away where I would never be heard of, heard from others. [¶] . . . [¶] And she threatened me, in essence, by the knowledge that she had guns underneath her bed and that she was not afraid to use them, that she had been actually taught at the police facility. [¶] Q. . . . She told you this, that she had guns and she wasn't afraid to use them? [¶] A. That's right. [¶] Q. Did she ever tell you this when she was angry with you? [¶] A. Yes. [¶] Q. Did she ever tell you that in reference to forcing you to change your trust? [¶] A. All the time. [¶] Q. Are you afraid of your daughter? [¶] A. Fearful and how."

At the end of the hearing, the court issued a Domestic Violence Restraining Order. It directed daughter not to harass, threaten or assault mother, and to stay away from mother, her home and car, and all medical facilities where she was a patient. The order was to remain in effect for three years. This appeal followed.

## DISCUSSION

Family Code section 6200 et seq. governs Domestic Violence Restraining Orders.[2] Under the statute, a court may issue a restraining order against a family member who abuses another family member. Such abuse includes "harassing" and "disturbing the peace of the other party." (§§ 6203, subd. (d), 6320, subd. (a).) Disturbing the peace is "conduct that destroys the mental or emotional calm of the other party." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497.) We review the trial court's issuance of a restraining order for abuse of discretion. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; *Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079) We review the trial court's factual findings in support of its order for substantial evidence. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822-823.)

Daughter contends the court erred in granting mother's request for a restraining order. First, daughter asserts mother suffered from memory problems, making her testimony unreliable. The court concluded otherwise, finding that mother was mentally competent. At the end of the hearing, the court stated mother "appears to this court to be competent to testify and the court has heard her testimony and she seemed very alert to the court and had a lot to say, maybe sometimes too much to say over and above what the questions asked for, but she seemed to understand questions both of her lawyer as well as of [daughter's] lawyer." In an exchange during the hearing that the court may have had in mind in finding mother could hold her own against counsel, daughter's counsel asked "Are you physically disabled? [¶] [Mother's Counsel]: Objection . . . [¶] [Court]: She can answer the best – I'm sure, ma'am, you've got an answer in your head already; is that right? [¶] [Mother]: You better believe, yes. [¶] Am I physically disabled? No. I came home from the hospital only three weeks ago or so, so I'm not quite myself yet physically. Consequently, I'm in this chair because I have to – I can't stand for any long lengths of time. It's painful. [¶] It was painful for me to come to this court today, but I felt it was a question of my coming to this court and saving my life and trying not to put

---

**2**    All undesignated statute references are to the Family Code.

myself out and to suffer to come down here, but I've done it. [¶] [Court]: Thank you, ma'am. You've answered the question. [¶] [Mother]: I think I answered it pretty ample, your honor." Mother's mischievous self-awareness in telling the court that the court had "better believe" she had a "pretty ample" answer belies daughter's assertion that mother's testimony was incompetent or unreliable.

Daughter disputes any suggestion that mother reasonably feared for her life. Daughter also contends that the court erred in finding daughter's transcribed telephone messages contained threats against mother. The court did not, however, base the restraining order on such findings. In fact, the court expressly found daughter had not physically threatened or touched mother. But even in the absence of violence or mother fearing for her life, harassing conduct by itself can support a restraining order. (§§ 6203, subd. (d), 6320, subd. (a) [restraining order to prevent harassment]; *In re Marriage of Nadkarni, supra,* 173 Cal.App.4th at p. 1496 ["the requisite abuse need not be actual infliction of physical injury or assault"].)

Finally, daughter contends three years is too long for the restraining order. In support, she asserts that a domestic violence restraining order's purpose is to give the parties a cooling-off period no longer than necessary to allow them to resolve the differences that triggered violence. Her assertion rests on a faulty premise, however, because violence need not occur for a restraining order to issue. An order can rest on other grounds, such as harassment or disturbing the other party's peace. (§§ 6203, subd. (d), 6320, subd. (a).) Because daughter does not discuss the reasons the court issued the restraining order here, and the record is silent about the court's reason for selecting a three year term, she cannot show the court abused its discretion. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 708.)

5

## DISPOSITION

The Domestic Violence Restraining Order is affirmed.  Respondent's costs on appeal, if any, are awarded to respondent.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.