Filed 4/11/14  Keele v. Zeal CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KERI A. KEELE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>REGGIE A. ZEAL,<br><br>    Defendant and Appellant. | E057125<br><br>(Super.Ct.No. HEV1200314)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Robert W. Nagby, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed in part; reversed in part.

Alan S. Yockelson for Defendant and Appellant.

Reed Webb for Plaintiff and Respondent.

1

I

INTRODUCTION[1]

Defendant and appellant Reggie A. Zeal appeals from a three-year restraining order granted on July 12, 2012.[2] (§ 6300 et seq.) Zeal argues the restraining order—including a firearm prohibition and the requirement to attend a 52-week batterer's program (§§ 6343, subd. (a), and 6389, subd. (a))—was an abuse of discretion and should be reversed. We affirm the order, including the mandatory firearm restriction, but reverse the order to attend a batterer's program.

II

FACTUAL AND PROCEDURAL BACKGROUND

Zeal and respondent Keri A. Keele began living together in her Winchester residence several years before July 2012.

On June 21, 2012, Keele filed a request for a domestic violence restraining order against Zeal under the Domestic Violence Prevention Act (DVPA). (§ 6200 et seq.) Keele described three incidents involving abuse. In January 2012, Zeal punched or kicked five holes in the walls of her home. He also cracked her laptop's screen and submerged her Apple device in liquid. On May 9, 2012, Zeal was verbally abusive and

---

[1] All statutory references are to the Family Code unless stated otherwise.

[2] The order expires on July 12, 2015.

2

slammed a door hard enough to put a hole in the laundry room wall. Keele moved out to stay with her parents. In June 2012, Keele began eviction proceedings against Zeal, including an offer to pay him up to $15,000 if he vacated voluntarily. On June 6, 2012, Zeal locked Keele out of her own home and she had to call the police to cut a chain to gain access. Keele requested the court order Zeal to stop harassing her, to move out of her house, and to stay 100 yards away from her. The court granted a temporary restraining order.

At the hearing on July 12, 2012, Keele submitted photographs of a broken ceiling fan and a damaged irrigation system. She testified that Zeal saved urine in bottles and jugs and, after the eviction began, she found urine dispersed on a carpet and a planter. There were also broken windows and holes in the walls of the laundry room and bathroom. She believed Zeal had punched her laptop and soaked an Apple device. Although Zeal did not physically assault or threaten Keele, he was verbally abusive. Zeal also padlocked the gate to the house, sealed windows and locks, and installed a security camera.

Zeal admitted he had a gun and the court advised him that he was required to sell it or turn it over to law enforcement. Zeal testified that Keele was abusive toward him and had damaged his property, including the clock on a microwave. He claimed his laptop was torched. He admitted breaking a window and making the hole in the laundry room wall but denied or did not plausibly refute other damage to the property. He

3

described himself as self-employed in real estate and a community and church volunteer. Zeal said he used urine as a repellant for rattlesnakes and coyotes. Zeal's sister testified that urine will deter rattlesnakes. After Keele began eviction proceedings, Zeal believed he had 60 days until the end of August 2012 to vacate.

The court found that Zeal had acted maliciously, intending to hurt Keele emotionally by damaging her property. The court ruled that property damage is a form of domestic violence and granted the three-year restraining order against Zeal and ordered him to move out of Keele's residence. The court prohibited Zeal from possessing firearms during the period of the restraining order. (§ 6389, subd. (a).) The court also ordered Zeal to attend a 52-week batterer's intervention program. (§ 6343, subd. (a).)

III

*A. Standards of Review*

The parties agree as to the established standards of review:

A grant or denial of injunctive relief is generally reviewed for abuse of discretion. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849-850.) This standard applies to a grant or denial of a protective order under the DVPA. (See *Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079.)

"'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial

4

court.'  (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)  At the outset, however, we must determine whether the trial court applied the correct legal standard to the issue in exercising its discretion, which is a question of law for this court."  (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420-421.)

"A reviewing court applies the substantial evidence standard of review to a trial court's factual findings, 'regardless of the burden of proof at trial.'  [Citation.]  Our sole inquiry is 'whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted,' supporting the court's finding.  [Citation.]  'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.'  [Citation.]"  (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822-823.)

B.  *Damage to Personal Property as Abuse*

Zeal argues there was no physical threat or injury committed in this case and the damage of personal property did not constitute domestic violence justifying a restraining order.  We disagree.

Family Code section 6300 provides that a domestic violence restraining order may be issued "if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse."  "Abuse" means "[t]o engage in any behavior that has been or could be enjoined pursuant to Section 6320."  (Fam. Code, § 6203, subd. (d).)  Family Code section 6320, subdivision (a), includes "destroying personal property" as abuse.

5

Here there is no question the commissioner applied the correct legal standard, which permits the court to decide, to its satisfaction, that Keele showed reasonable proof of abuse based on Zeal's destruction of her personal property. (*Gonzalez v. Munoz, supra,* 156 Cal.App.4th at pp. 420-421.) Furthermore, substantial evidence supports the trial court's factual findings. (*Sabbah v. Sabbah, supra,* 151 Cal.App.4th at pp. 822-823.) Zeal admitted some of the behavior—even though he tried to explain it—and he did not refute Keele's other assertions. But had he "denied all her allegations, '""'it is the exclusive province of the [trier of fact] to determine the credibility of a witness . . . .'""' (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) . . . The testimony of a single witness may provide sufficient evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)" (*Sabbah,* at p. 823.)

The court obviously found Keele to be more credible than Zeal. Her testimony and the circumstantial evidence proved that Zeal caused significant property damage to Keale's laptop, the Apple device, and the walls, windows, and fixtures of her home. He also tried to bar her access to the home and may have spilled urine on the premises. In sum, substantial evidence supported the court's finding that Zeal committed the alleged acts of domestic violence.

## C. *The Firearm Restriction*

The firearm restriction is mandatory under section 6389, subdivision (a). We reject Zeal's challenges for the reasons analyzed at length in *Ritchie v. Konrad* (2004)

6

115 Cal.App.4th 1275, 1294-1299.  We will not repeat all of *Ritchie's* comprehensive discussion but extract some of the more salient comments:  "[S]ection 6389 . . . is laced with provisions mandating surrender of firearms for the full term of any protective order.  None of these sections hint the trial court possesses any discretion to avoid imposing these mandatory requirements or to provide any relief at any time during the duration of the underlying protective order."  (*Id.* at p. 1295.)

The *Ritchie* court also recognized:  "Some might quarrel with this inevitable and irrevocable pairing of protective orders and firearm restrictions.  But it is not difficult to understand how it came to pass.  If a person represents a substantial threat to inflict physical harm on another person, it appears reasonable to disarm the former, at least to take away the weapons most capable of causing death or death-threatening injury, e.g., firearms.  [Fn. omitted.]  The logical connection has become less clear, however, with recent amendments allowing protective orders based primarily on nonviolent conduct, such as a pattern of unwanted and obnoxious communications (e-mails, telephone calls, letters, etc.).

". . . In 1998, however . . . the Legislature amended the statutory scheme to expand the definition of 'domestic violence' and 'abuse' to embrace nonviolent but harassing conduct.  As a result, a trial court now can impose a protective order not only because of prior or threatened bodily injury, but also where the restrained party has only been '. . . destroying personal property . . . or disturbing the peace of the other party . . . .'  [Fn.

7

omitted.]  [¶]  As a consequence of these 1998 amendments, intended or otherwise, a firearms restriction becomes mandatory even when a trial court imposes a protective order based solely on . . . this sort of nonviolent behavior [which] in some circumstance can 'place [the other person] in *reasonable apprehension of imminent serious bodily injury*.'  But a trial court no longer need make such a finding in order to issue a protective order.  It is sufficient the evidence demonstrate one or the other of these nonviolent acts."  (*Ritchie v. Konrad, supra,* 115 Cal.App.4th at pp. 1297-1299.)

We recognize courts have expressed differing opinions about the constitutional validity of mandatory firearm restrictions.  Nevertheless, even the United States Supreme Court continues to recognize the legitimacy of governmental firearm restrictions.  (*District of Columbia v. Heller* (2008) 554 U.S. 570, 626-627.)  In *United States v. Chovan* (9th Cir. 2013) 735 F.3d 1127, 1141 [distinguishing *United States v. Chester* (4th Cir. 2010) 628 F.3d 673], the Ninth Circuit recently held that prohibiting domestic violence misdemeanants from possessing firearms did not violate rights protected by the Second Amendment under the test of intermediate scrutiny, since prohibition on gun possession by domestic violence misdemeanants is substantially related to the important government interest of preventing domestic gun violence.  Based on the California statute and *Ritchie*, we deem the mandatory firearm prohibition not a violation of the Second Amendment or an abuse of discretion.

8

*D. The Batterer's Program*

Zeal contends that, absent any evidence of physical violence or threats, the court abused its discretion by ordering Zeal to attend a 52-week batterer's program. (§ 6343.) The court did not expressly state why it made that order although it found that Zeal had acted maliciously, intending to hurt Keele emotionally by damaging her property. Keele concedes the batterer's program may constitute a burdensome condition.

Unlike the mandatory firearm restriction, an order to participate in a batterer's program is discretionary: "After notice and a hearing, the court may issue an order requiring the restrained party to participate in a batterer's program approved by the probation department as provided in Section 1203.097 of the Penal Code." (§ 6343, subd. (a).) Penal Code section 1203.097 sets forth the terms of probation for domestic violence. Subdivision (c), provides, "[t]he court or the probation department shall refer [criminal] defendants only to batterer's programs that follow standards outlined in paragraph (1), which may include, but are not limited to, lectures, classes, group discussions, and counseling. . . . [¶] (1) The goal of a batterer's program under this section shall be to stop domestic violence."

The present case involves a finding of domestic violence abuse, not a criminal conviction for domestic violence. Zeal did not engage in physical violence or threats and cannot reasonably be characterized as a "batterer," even if he did engage in nonphysical

domestic violence abuse.  Based on this record, we hold it was an abuse of discretion for the trial court to order Zeal to participate in a 52-week batterer's program.

## IV

## DISPOSITION

We affirm the three-year restraining order, including the firearm restriction.  We reverse the order that Zeal participate in the 52-week batterer's program.  Keele, the prevailing party, shall recover her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


RICHLI
Acting P. J.


KING
J.

10