Filed 12/16/21  Jones v. Henricks CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ASHLEY AUBRA JONES, | B305370 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STRO06075) |
| v. | |
| JOEL MARVIN HENRICKS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anne K. Richardson, Judge.  Affirmed.

Mark McBride for Defendant and Appellant.

Ashley Jones, in pro. per., for Plaintiff and Respondent.
* * * * * *

At the request of Ashley Jones (wife), the trial court issued a three-year restraining order against Joel Henricks (husband). Husband contends that the order is unsupported by the evidence. Ample evidence supports the order, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Husband and wife married in January 2016. Later that year, they had a son, Hayden. Husband has a son, Huck, from a prior marriage.

Between January 2016 and August 17, 2019, husband and wife had a tumultuous marriage. During this period, husband would call wife a "whore," a "slut," and a "skank." On two occasions, this verbal abuse escalated to physical assault. In December 2016, husband twisted wife's hand to take away her cell phone, which she was using to record their verbal altercation. Nine months later, in September 2017, husband again twisted wife's hand to take away the cell phone she was using to record a verbal altercation; this time, however, husband used such force that he broke wife's hand in three places, which necessitated surgery. On both occasions, at least one child was present. Husband also engaged in conduct designed to "control" wife: He secretly placed a microphone in their bedroom; he secretly put an after-market tracking device on her car; and he repeatedly told wife that he was watching her, knew where she was, and "had files on [her]." Husband also told wife that he viewed their son Hayden as his "insurance policy" and warned that, if wife ever left him, he would make up "false allegations" about her.

Wife left husband five times during this period, but always returned with the hope of being able to work things out. On August 17, 2019, however, wife left husband for good. The night

before, husband came home in the middle of the night, threw back the covers of the bed where wife slept, and told her he had "proof" that she was cheating on him because he had recorded her and another man having sex in the master bathroom. Husband accused wife of being a "whore" and a "psychopathic liar" who would "burn in hell" for her "infidelity." Husband repeated his tirade in front of the children. Husband played the allegedly incriminating recording for wife, husband's own brother, and even his son Huck, but none heard any voices on the tape. Concerned that husband was hearing voices, wife packed up Hayden and a few belongings and left husband for good.

When husband came home later that day and realized wife had left him, he did two things. He activated the internal and after-market GPS trackers on wife's car so he could track her whereabouts. He also filed a police report complaining that wife had scratched him; as proof, he attached photos of scratches on his arm caused by yard work he had done a few days earlier. As a result, when wife went to the police station to get help on how to get a restraining order against husband, she was arrested and placed in jail for 11 hours. Husband offered to bail her out, but she refused.

## II. Procedural Background

On August 30, 2019, wife applied for a temporary restraining order against husband. The trial court granted the application.

Wife also applied for a permanent restraining order. The matter proceeded to an evidentiary hearing. Six witnesses testified over the course of three days in December 2019, January 2020, and February 2020.

Husband took the stand. He testified that he had never verbally or physically abused wife, and had never accused her of being unfaithful. Instead, husband testified that wife had verbally and physically abused him, and that he had been the one who wanted to end the marriage. He testified that wife's account of the August 2019 incident was all wrong: Wife had come into the bedroom, yanked back the sheets and started photographing husband while he was naked; when he objected, she smacked him, scratched his arm, and busted his lip. Husband is six feet four inches tall.

After hearing all of this evidence, the trial court on three occasions found husband's testimony to "lack[] credibility" and found wife's testimony "very credible." On the basis of wife's testimony as well as the other evidence, the court found that husband had "engaged in acts of abuse" that "warrant[ed] the issuance of [a] restraining order[]." The court issued a restraining order with a three-year duration that (1) enjoined husband from engaging in certain conduct toward wife, such as harassing, attacking, stalking, and keeping her under surveillance, (2) ordered husband to stay 100 yards away from her, and (3) awarded wife full legal and physical custody of Hayden, with monitored visitation for father. The order did not list Hayden as a protected person.

Husband filed this timely appeal.

## DISCUSSION

Husband argues that the restraining order is not supported by the evidence.

The Domestic Violence Protection Act (the Act) empowers a trial court to enter a restraining order lasting up to five years to prevent an occurrence or recurrence of domestic violence. (Fam.

Code, §§ 6220, 6203, 6218, 6300, 6340, 6345; *Quintana v. Guijosa* (2003) 107 Cal.App.4th 1077, 1079.)[1] The person seeking the order must prove, by a preponderance of the evidence, "past act or acts of abuse." (§ 6300, subd. (a).) For these purposes, "abuse" includes "threatening," "harassing," "attacking," "battering," "stalking," and "disturbing the peace" of another. (§ 6203, subd. (a)(4) [defining "abuse" under the Act as "engag[ing] in any behavior that . . . could be enjoined" under section 6320], 6320, subd. (a) [listing, among other things, the conduct indicated].) A party "disturb[s] the peace of the other party" if he engages in conduct that "destroys the mental or emotional calm of the other party." (§ 6320, subd. (c); *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498; *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602.) We review the trial court's issuance of a restraining order for an abuse of discretion, reviewing any subsidiary legal questions de novo and the sufficiency of the evidence for substantial evidence. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420; *Shoen v. Zacarias* (2019) 33 Cal.App.5th 1112, 1118.) In evaluating whether substantial evidence supports an order, we evaluate the record in the light most favorable to the order, which includes deferring to the trial court's credibility findings. (*In re Alexandria P.* (2016) 1 Cal.App.5th 331, 354; *Ferguson v. Yaspan* (2014) 233 Cal.App.4th 676, 684.)

The trial court did not abuse its discretion in issuing the restraining order against husband because it is supported by substantial evidence. Crediting wife's testimony (as we must because the trial court did), there is ample evidence that husband "abused" wife within the meaning of the Act: His verbal abuse

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

included threats and harassment; he physically attacked and battered her on two occasions; and his conduct in surreptitiously recording her, tracking her whereabouts, threatening to use their son as a pawn, and warning that he would make false criminal allegations against her either constitute stalking or, at a minimum, disturbing her peace.  (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 818-819 ["monitoring [girlfriend's] activities," accusing her of cheating, and exhibiting "controlling behavior" qualified as "disturbing the peace"].)  Indeed, wife's friends noted how abnormally nervous wife was at all times.

On appeal, husband invites us to view the record differently than the trial court.  More specifically, he urges that wife's testimony is not believable and that the other witnesses' testimony is also not believable because it is based on what wife had told them; highlights his contrary and innocent explanations for all of his conduct; and emphasizes those portions of other witnesses' testimony suggesting that husband is a good parent and husband.  These arguments ignore the governing standard of review.  At bottom, husband asks us to reweigh the evidence; under substantial evidence review, we simply cannot.  (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

**DISPOSITION**

The order is affirmed. Wife is entitled to her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ


7