[No. G037223. Fourth Dist., Div. Three. May 30, 2007.]

DOREEN SABBAH, Plaintiff and Respondent, v.
RAMADAN SABBAH, Defendant and Appellant.

## COUNSEL

Ramadan Sabbah, in pro. per.; Law Offices of Joseph A. Shuff III and Joseph A. Shuff III for Defendant and Appellant.

Doreen S. Sabbah, in pro. per., for Plaintiff and Respondent.

## OPINION

**IKOLA, J.**—Ramadan Sabbah challenges the court's denial of both his new trial motion and his application under Code of Civil Procedure section 473, subdivision (b), for relief from a restraining order against him.[1] He contends

---

[1] Although a court's denial of a new trial motion is generally *not* appealable, we construe Ramadan's notice of appeal as appealing from the underlying judgment. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 22 [23 Cal.Rptr.3d 490, 104 P.3d 844].) Ramadan's arguments in his opening brief reveal he intended to appeal from the judgment. Doreen addressed the merits of those arguments in her brief; therefore she will not be prejudiced by our treating this appeal as a challenge to the judgment.

On the other hand, Ramadan's appeal from the court's denial of his motion under Code of Civil Procedure section 473—while appealable under Code of Civil Procedure section 904.1,

his wife, Doreen Sabbah,[2] failed to carry her burden of proving he committed domestic violence, and the court erred by failing to give him notice under Family Code section 3044 that a domestic violence finding against him would adversely affect him in custody determinations. The latter argument requires us to interpret Family Code section 3044 to determine *when* and *under what circumstances* the statutory notice is required. Under our interpretation of the statute, we affirm the court's judgment and its order denying his application to set aside the restraining order.

## FACTS

In December 2005, Doreen obtained a domestic violence temporary restraining order against Ramadan seeking, inter alia, custody of their children, and noticed a hearing on her request for a three-year restraining order. Her subsequently filed supplemental declaration stated, inter alia: "December 7, 2005, Ramadan, . . . came into the kitchen and I was backed to the wall and he grabbed me by the throat and then grabbed a potato peeler and held it up as a weapon. [¶] December 8, 2005, . . . I left [the apartment] to take the children to school. . . . When I returned Ramadan had locked me out. He told me I could not come in and to go to hell." She alleged she was locked out of their apartment for several days.

In his answer to the temporary order, Ramadan agreed to Doreen's requested custody order, with the notation "please see attached dissolution of marriage," but contested all other requests, other than visitation which he left blank. In his attachments, Ramadan stated, "As for the incident she spoke of, the entire agony and argument came as soon as she heard me saying to her I will be moving out of the bedroom . . . ." "I went to the kitchen to peel a Q-cumber [*sic*], and as soon as she came to the kitchen, I started to have pain in my chest, so I told her not to insult me again you ungrateful bitch, after I fed, [clothe], shelter and put you through a law school . . . . [¶] By morning I started to feel heavy pain going thru my chest and my left arm as well—I said to myself if she start[s] to babble like last night I might drop dead, so she came home two hours after dropping the kids to school—I locked the door from inside—and I told her to go away, I'm not gonna have three heart attacks in one year . . . ." Ramadan asked the court "to enforce the

---

subdivision (a)(2)—is unsupported by sufficient legal argument in his opening brief. Code of Civil Procedure section 473, subdivision (b), permits a court to relieve a party "from [an] order . . . taken against him . . . through his . . . mistake, inadvertence, surprise, or excusable neglect." In his opening brief, Ramadan did not argue the court's order resulted from any of these factors. We therefore deem the issue to be waived. (*Barthelemy v. Chino Basin Mun. Water Dist.* (1995) 38 Cal.App.4th 1609, 1613, fn. 2 [45 Cal.Rptr.2d 688].)

[2] Hereafter we refer to Ramadan and Doreen Sabbah individually by their first names. We intend no disrespect; our practice simply facilitates ease of reference.

'dissolution of marriage' signed on 12-31-04" as to child and spousal support and requested that "if the children want to see me and have a relationship with me—I ask the court to facilitate such request." Ramadan attached a copy of the dissolution of marriage agreement in which the parties agreed, inter alia, that Doreen would "have full and legal custody" of their five children.[3]

At the January 11, 2006 hearing, both parties acted in propria persona. (Doreen is a California licensed attorney.) The court summarized, and Doreen confirmed, that her "allegations generally" were (1) Ramadan grabbed her throat and threatened her with a potato peeler, and (2) he locked her out of the apartment. Doreen testified that after Ramadan locked her out of the apartment, the police advised her to find a place to stay near the court so she could file the temporary restraining order paperwork the next day. Ramadan testified: "[W]hen I locked her out I did experience the symptoms of a severe heart attack on the 8th, which is the next day after she had the fight with me. So the best thing I thought to protect my life is just to close the door and for her to go somewhere else until the kids come home. I did that." "The second thing about the kitchen instance . . . . [W]e had a dissolution of marriage in 2004 . . . . She wanted me out of the kids' life completely. I signed this letting her have custody of the children, but now she doesn't want me to have any relationship with the children."

The court found Ramadan had perpetrated domestic violence against Doreen and granted a restraining order against him. The court also awarded Doreen sole custody of the children with monitored visitation rights to Ramadan.

Ramadan then retained counsel who filed a motion for a new trial and to set aside the restraining order pursuant to Code of Civil Procedure section 473. Ramadan asserted he "did not understand nor realize the impact of the domestic violence action" on "child custody and related issues"; on the other hand, Doreen, as "an attorney . . . previously . . . employed by a family law firm and . . . knowledgeable regarding the import of a domestic violence action," "knew exactly what she was doing to obtain custody of [the] children . . . ."

Doreen retained counsel and argued Ramadan's "reliance upon Family Code section 3044 to support his motion . . . is misplaced . . . ." Although Ramadan's motion did not expressly mention Family Code section 3044 (section 3044), Doreen apparently inferred from his reference to her seeking custody that he was relying on the statute, because section 3044 creates a

---

[3] Doreen's supplemental declaration alleged the dissolution of marriage agreement was void and unenforceable.

rebuttable presumption that an award of custody to a domestic violence perpetrator is not in the child's best interest. Section 3044, subdivision (f) (section 3044(f)) requires a court under certain circumstances to inform the parties about the statute, as discussed in more detail, *post*. Doreen argued section 3044 "is predicated upon the party [accused] of domestic violence . . . seeking custody of the children," and further contended section 3044(f) only requires notice prior to custody mediation.[4] She asserted Ramadan's motion "must fail because *he never requested custody.*"

At the hearing on the motion, Ramadan's counsel argued he "was not aware of [section] 3044 . . . and the court should have given him notice of that before any proceeding occurred in this case." The court denied Ramadan's motion, finding "section 3044 is inapplicable," and "the criteria necessary for setting aside the court's orders under [Code of Civil Procedure section] 473 were not met."

## DISCUSSION

*Substantial Evidence Supported the Court's Finding Ramadan Committed Acts of Domestic Violence*

Ramadan asserts Doreen failed to prove by a preponderance of the evidence that he perpetrated domestic violence, contending this was "a classic 'liars' contest with one party arguing that events occurred while the other party argue[d] that they did not."[5] Thus, Ramadan essentially challenges the court's factual finding he committed the alleged acts of domestic violence.[6]

A reviewing court applies the substantial evidence standard of review to a trial court's factual findings, "regardless of the burden of proof at trial." (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 604 [124 Cal.Rptr.2d 342]; see also 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 364, p. 414.) Our sole inquiry is "whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted," supporting the court's finding.

---

[4] According to Doreen's brief, court-ordered mediation apparently took place on December 29, 2005, prior to the hearing. The record is silent as to whether the mediation involved custody issues.

[5] Doreen contends the domestic violence prevention services report (reviewed by the court prior to the hearing) contained "the court mediator's report of the statements by the children who were eyewitnesses." That contention is unsupported by the record which does not contain the referenced report.

[6] In his opening brief, Ramadan never argued the potato peeler and lockout incidents, even if they actually occurred, did *not* constitute acts of domestic violence within the meaning of the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.). Because Ramadan's brief failed to furnish a legal argument on this point, we treat the point as waived. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522 [85 Cal.Rptr.2d 376].)

(*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [85 Cal.Rptr.2d 386].) "We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment." (*Ibid.*)

■ Contrary to Ramadan's assertion that he denied Doreen's domestic violence allegations, he admitted locking her out of their apartment. Moreover, even if he had denied all her allegations, " ' " 'it is the exclusive province of the [trier of fact] to determine the credibility of a witness . . . .' " ' " (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [108 Cal.Rptr.2d 34].) The court evidently found credible Doreen's testimony about the potato peeler and lockout incidents. The testimony of a single witness may provide sufficient evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].) In sum, substantial evidence supported the court's finding Ramadan committed the alleged acts of domestic violence.

### The Court Properly Ruled Section 3044 Was Inapplicable

Ramadan contends the court erred by ruling he was not entitled to notice under section 3044(f) of the rebuttable presumption against an award of custody to a domestic violence perpetrator. He implies he would have more "vigorously" contested Doreen's abuse allegations if he had known a domestic violence finding against him would trigger the presumption that his gaining custody of the children would be detrimental to them. According to Ramadan, the purpose of section 3044(f) is to mandate notice to "the parties to . . . restraining order applications of the significance of a finding of 'domestic violence.' " In his view, a person accused of domestic abuse must be given the section 3044(f) notice "before any . . . decisions [are made] regarding domestic violence," i.e., while the accused can still defend against the accusation.

The court ruled section 3044(f) did not apply "at the point in time of a domestic violence underlying proceeding." By this ruling, the court interpreted the statute, an interpretation we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

Section 3044, subdivision (a) creates a rebuttable presumption affecting domestic violence perpetrators who seek custody of children: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child . . . within the previous five years, there is a rebuttable presumption that an award of . . . custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . ."

Section 3044(f) mandates that parties be informed of the presumption, providing: "In any custody or restraining order proceeding in which a party has alleged that the other party has perpetrated domestic violence in accordance with the terms of this section, the court shall inform the parties of the existence of this section and shall give them a copy of this section prior to any custody mediation in the case."

We examine section 3044(f)'s language to determine at what stage in the proceedings a court must notify the parties of the existence of the statute. In doing so, we are guided by several basic rules of statutory construction. "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) "Although a court may properly rely upon extrinsic aids, it should first look to the words of the statute to determine the Legislature's intent." (*O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 211 [54 Cal.Rptr.2d 549].) "Courts may look to legislative history to construe a statute *only* when the statutory language is susceptible of more than one reasonable interpretation." (*Pacific Gas & Electric Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 86, 92 [102 Cal.Rptr.2d 20].)

On the issue of timing, section 3044(f) is ambiguous—susceptible of an interpretation that notice is required to be given "[i]n any custody or restraining order proceeding" in which a party is accused of domestic violence, regardless of whether custody mediation has been ordered or scheduled. On the other hand, 3044(f)'s mandate that a copy of the statute be given to the parties "prior to any custody mediation" supports Doreen's interpretation that the subdivision applies only in cases involving such mediation.

Because the statute is ambiguous, we review portions of section 3044(f)'s legislative history that shed light on the Legislature's intent in enacting it.[7] Specifically, we take judicial notice of two versions of the bill "that the Legislature considered as the bill made its progress through the Legislature" (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5 [48 Cal.Rptr.2d 1, 906 P.2d 1057]), and a related legislative committee analysis.[8]

---

[7] The parties were notified pursuant to Evidence Code section 459, subdivision (c), that we were considering taking judicial notice of identified portions of the legislative history and they were given a reasonable opportunity to meet this information pursuant to Evidence Code sections 455, subdivision (a), and 459, subdivision (d). Neither party responded to our invitation.

[8] Legislative committee reports and analyses "are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326]; see also *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133

Section 3044 was amended in 2003 to include subdivision (f) (along with other amendments) by Senate Bill No. 265 (2003–2004 Reg. Sess.) (Senate Bill No. 265). As introduced, Senate Bill No. 265 would have added subdivision (f) as follows: "In any case in which a parent alleges that the other parent has committed acts of domestic violence, the custody mediator, at the outset of the mediation, shall provide to each of the parties a written copy of this section and inform the parties orally of the provisions of this section." (Sen. Bill No. 265, as introduced Feb. 18, 2003, p. 5.)

As amended on April 21, 2003, Senate Bill No. 265 added subdivision (f) in its present form, thereby shifting responsibility for the giving of the requisite notice from the *custody mediator* to the court.[9] (Sen. Amend. to Sen. Bill No. 265 (2003–2004 Reg. Sess.) Apr. 21, 2003, pp. 5–6.) The Senate Judiciary Committee analysis of Senate Bill No. 265, as amended on April 21, 2003, includes the following explanation of the purpose of the amendment: "Court would be required to inform parties about the presumption prior to custody mediation. [¶] The author states that custody mediators generally do not tell their clients about the statutory presumption against custody for perpetrators of domestic violence. Since mediation often involves encouraging divorcing parents to agree to joint parenting, the author asserts that 'many battered victims and their children are not benefiting from the policy behind [the law].' [¶] Accordingly, this bill would require the court, in any custody or restraining order proceeding in which one parent has alleged that the other has committed domestic violence, to inform the parties about the rebuttable presumption against granting custody to perpetrators of domestic violence, and to provide them with a copy of the applicable statutes before any custody mediation occurs." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 265 (2003–2004 Reg. Sess.) as amended Apr. 21, 2003, pp. 6–7.)

■ Taken together, these versions of Senate Bill No. 265, along with the committee analysis of the April 21, 2003 amendment, clarify the Legislature's intent to ensure that parties *in custody mediations* be informed about and provided a copy of section 3044. Thus, section 3044(f) requires a court in "any custody or restraining order proceeding" involving domestic violence accusations to provide the statutory notice to the parties before they enter into custody mediation.

Here, Ramadan does not contend, nor does the record reflect, that he and Doreen ever entered into custody mediation. Family Code section 3170

Cal.App.4th 26, 32 [34 Cal.Rptr.3d 520] [legislative committee analyses are cognizable legislative history in the Third Appellate District].)

[9] In this amendment, the subdivision was redesignated as (g), but a subsequent amendment relettered it as (f). (Sen. Amend. to Sen. Bill No. 265 (2003–2004 Reg. Sess.) May 13, 2003, p. 5.)

mandates such mediation only where "it appears on the face of a petition, application, or other pleading to obtain or modify a temporary or permanent custody or visitation order that custody, visitation, or both are contested." Because Ramadan did not contest custody and there is no record of any custody mediation, the court properly concluded section 3044(f) notice was not required at the time of the hearing on the protective order.

## DISPOSITION

The judgment and postjudgment order are affirmed. Doreen is awarded costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.