Filed 2/19/15  A.T. v. B.K. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| A.T., | |
| Plaintiff and Respondent, | E058479 |
| v. | (Super.Ct.No. IND1201194) |
| B.K., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dale R. Wells, Judge. Affirmed.

Bartell & Hensel, Donald Hensel and Lara J. Gressley for Defendant and Appellant.

Law Offices of Renell E. Burch, Tecla M. Lunak and Renell E. Burch; A.T., in pro. per., for Plaintiff and Respondent.

Plaintiff and respondent A.T. requested, and was granted by the trial court, a restraining order pursuant to the Domestic Violence Prevention Act (DVPA), Family

1

Code sections 6200 et seq., against her former boyfriend, defendant and appellant B.K.

Defendant contends that plaintiff did not meet her burden of proving by a preponderance

of the evidence that he committed domestic violence against her, and argues the trial

court erred by denying him the opportunity to cross-examine plaintiff regarding whether

she had any prior felony convictions.  We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff dated defendant for two years, ending in June 2012, less than a month

after the birth of their child, when plaintiff moved out of the house they had previously

shared.  In June and July 2012, plaintiff and defendant remained in contact and—though

defendant expressed an interest in rekindling their relationship that plaintiff did not

share—plaintiff testified that she did not initially have any concerns about her safety.

Plaintiff presented evidence, however, that beginning in July 2012, defendant

started to act in a manner that caused her to fear for her safety, and that of others,

including their child.[1]  This behavior included showing up at plaintiff's home, uninvited

and at odd hours, even though she was living in a gated community and had instructed

security at the front gate not to allow defendant to enter[2]; badgering plaintiff about her

---

[1]  In addition to plaintiff's own testimony, the trial court also heard testimony
from plaintiff's mother and two men plaintiff had dated, who testified regarding those
parts of defendant's behavior they had witnessed, and who corroborated or added to
plaintiff's own testimony.

[2]  Plaintiff speculated that defendant, who is a deputy in the Riverside County
Sheriff's Department, used keys available to law enforcement to enter the back gate of
the community.  She admitted on cross-examination, however, that she had not

*[footnote continued on next page]*

relationships with other men, and engaging in harassing and intimidating behavior towards men who were currently or had previously dated her; making statements that suggested defendant was following plaintiff, or at least had information regarding her whereabouts; telling plaintiff he had a dream that he had hurt their son to make her suffer; and making statements that plaintiff understood to suggest defendant would kill her and her son, if plaintiff and defendant could not be together.

There is no need for us to detail every incident described by plaintiff and her supporting witnesses, but some specific examples are in order. In August 2012, during one of the occasions when defendant had appeared uninvited at plaintiff's home, another man (one of plaintiff's witnesses) called plaintiff on her cell phone. Defendant grabbed the cell phone, answered it, profanely threatened the caller, and then threw the phone, breaking plaintiff's blinds.

In September 2012, defendant initiated a physical altercation with an ex-boyfriend of plaintiff (another of her witnesses) at a bar. Defendant head butted the ex-boyfriend three times inside the bar, and tried unsuccessfully to get the ex-boyfriend to continue the fight outside.

In November 2012, there was an incident during which defendant barged in the back door of plaintiff's house, grabbed from a drawer a revolver that he had previously given her for protection, and began searching the house for her current boyfriend.

_____

*[footnote continued from previous page]*
*[footnote continued from previous page]*
investigated the issue, and had no specific evidence as to how defendant entered the community.

3

Defendant eventually left, but not until after frightening plaintiff to the point that, when she walked away from him to try to get their child and leave for her mother's house, she "honestly thought he was going to put a bullet in the back of [her] head." This incident continued some time later with a confrontation between defendant and plaintiff's mother at a gas station.

In December 2012, plaintiff twice discovered illegal drugs in her car. She suspected that defendant had planted the drugs because he had the only spare key to the car, no one else had access to the car, and the incidents coincided in time with multiple calls by defendant to dispatch for the Riverside County Sheriff's Department to report plaintiff for reckless driving.

Defendant presented a very different account of his behavior since July 2012, primarily through his own testimony.[3] For reasons discussed more fully below, however, we need not describe his version of events in any detail. For purposes of resolving the present appeal, it is sufficient to note that defendant denied having engaged in any inappropriate behavior, and presented an alternative version of the relevant events.

Plaintiff filed her request for a domestic violence restraining order on January 15, 2013. The trial court heard the matter on February 4, 2013, and issued its order granting the restraining order on the same date.[4]

---

[3] In addition to defendant himself, one other witness testified briefly on defendant's behalf.

[4] Additional facts will be discussed below as necessary to address defendant's claims of error.

4

## II. DISCUSSION

## A. Substantial Evidence Supported the Court's Finding that Plaintiff Committed Acts of Domestic Violence.

Defendant argues that plaintiff did not meet her burden of proof to show by a preponderance of the evidence that defendant committed "abuse" within the meaning of the DVPA, and that the trial court abused its discretion by ruling otherwise and issuing the requested restraining order. We find no abuse of discretion.

We review the trial court's issuance of a restraining order under the DVPA for abuse of discretion. (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.) "However, '[j]udicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court, i.e., in the "'legal principles governing the subject of the action . . . .'"'" (*Id.* at 1264-1265.) We review the factual findings necessary to support the protective order for substantial evidence. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822-823 (*Sabbah*).) In examining the record for substantial evidence, "[o]ur sole inquiry is 'whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted,' supporting the court's finding." (*Id.* at p. 822.)

The testimony of plaintiff and her supporting witnesses, which we briefly summarized above, constitutes substantial evidence supporting the court's finding that defendant had committed abuse within the meaning of the DVPA, justifying issuance of the restraining order. Indeed, defendant has not contended on appeal that the behavior of defendant, as described by plaintiff and her supporting witnesses, does not rise to the

5

level of abuse within the meaning of the DVPA. Defendant presented an alternative version of events, but whether plaintiff's evidence was contradicted or uncontradicted is irrelevant to whether the court's decision was supported by substantial evidence. (*Sabbah*, *supra*, 151 Cal.App.4th at p. 822.) Because the trial court's ruling was supported by substantial evidence, we conclude defendant has demonstrated no abuse of discretion.

Defendant's argument in support of the contrary conclusion is based primarily on his interpretation of the trial court's oral explanation of its ruling. This approach runs counter to the general principle that "an appellate court reviews the ruling of the trial court, not its rationale, and may affirm a trial court ruling on any proper basis presented by the record, whether or not relied upon by the trial court." (*Cates v. California Gambling Control Com.* (2007) 154 Cal.App.4th 1302, 1312.) Defendant's parsing of the trial court's oral statement of its reasoning, therefore, fails to address the matter at hand, namely, whether the trial court's finding that plaintiff had met her burden of proof was supported by substantial evidence.

Moreover, we disagree with defendant's characterization of the trial court's reasoning. He argues that the trial court determined defendant to be "a credible witness," but found only that it was "possible" that what plaintiff and her witnesses said was true. The court noted that defendant had "every incentive" to present himself in court very differently than he was depicted in plaintiff's testimony, especially given that defendant had been placed on administrative leave by his employer, the Riverside County Sheriff's Department, for reasons related to this case. Defendant argues that "a mere possibility

6

does not rise to the level of preponderance of the evidence," and that "[a]ll litigants in every case have an incentive," so the trial court abused its discretion by ruling plaintiff to have proven her case to a preponderance of the evidence "'in spite of' [defendant's] credibility."

Defendant's argument, however, is based on purported factual findings that the trial court did not make.[5] The trial court did not find defendant credible, as defendant would have it; the trial court stated that defendant "did come across as very credible as a witness," but ultimately gave weight to the lingering "question in [the court's] mind about whether the things he testified to were exactly as he represented them." In other words, the court did *not* find defendant credible, or at least not more credible than the other witnesses at trial, including plaintiff, who also "came across as being credible."

Similarly, the trial court did not just find a "possibility" that plaintiff and her witnesses were telling the truth, and round that possibility up to a preponderance of the

---

[5] The full text of the portion of the reporter's transcript on which defendant's arguments rest is the following:

"I have to say [defendant] did come across as very credible as a witness. He did, [and] so did [plaintiff and the other witnesses]. All of the people came across as being credible. They came across as being motivated in a different way perhaps.

"I do note though that it's possible that everything that [A.T.] and her witnesses have said is true and that [defendant] having been taken out of the department on administrative leave would have every incentive to sit there very controlled and put a different face on what was going on than the face that I heard from the other side.

"So in spite of the fact that [defendant] did come across as credible, I still have a question in my mind about whether the things he testified to were exactly as he represented them. I don't suppose I'll ever know. We don't have a jury of 12 people here to take a vote and make a decision. It's up to me to make that decision.

"As I've indicated, I believe that the burden of proof has been met and a restraining order must issue."

evidence. Rather, it noted "that it's possible that everything that [plaintiff] and her witnesses said is true," acknowledged that defendant had "put a different face on what was going on," and recognized that it was the court's duty to "make a decision" about how much weight to give the conflicting evidence. To read the court's discussion of its reasoning as defendant does, to amount to a finding of fact that plaintiff raised only a "mere possibility" that events occurred as described by plaintiff and her witnesses, is inaccurate, to say the least.

In short, the court's conclusion and ruling, having considered all the evidence, was that plaintiff had met her burden of proof: "Without going into what level I think that the proof has risen to, I think it is clearly past the preponderance of the evidence standard. I think it clearly is."[6] The testimony of plaintiff and her witnesses regarding defendant's harassing and violent behavior constitutes substantial evidence in support of that ruling, regardless of defendant's contradictory testimony. Defendant's parsing of the trial court's oral statement of its reasoning is unpersuasive. We find no abuse of discretion.

---

[6] Defendant's suggestion at oral argument that the trial court failed to understand and properly apply the preponderance of the evidence standard is belied by the transcript of the proceedings, during which the trial court explained the standard correctly, and at some length: "…if you think about the scale of justice . . . you just have to tip the scale ever so slightly one direction or the other. And if, after I've heard all of the testimony, I feel like the scale has been tipped slightly even in the favor of [plaintiff], I have to grant the restraining order. If I feel it's been tilted slightly in favor of [defendant] or that at the end of it I really can't tell it's been tilted one way or the other, I have to deny the restraining order. It's really that simple."

**B. The Court Did Not Err by Sustaining Plaintiff's Objection to Defendant's Inquiry Whether Plaintiff's Mother Had Any Felony Criminal Convictions.**

During cross-examination of plaintiff's mother, defendant's counsel asked the following question: "Have you ever been convicted of anything, a felony?" Plaintiff's counsel objected on the ground of relevance, and the trial court sustained the objection. Defendant argues on appeal that the trial court erred because it "denied [defendant] his opportunity to inquire into whether [plaintiff] had a prior felony conviction." We disagree.

Defendant cites Evidence Code section 788 as support for the proposition that "'[t]he fact of a witness's felony conviction is relevant in order to determine the credibility of that witness, subject to few exceptions [that do not apply in this case]." He ignores, however, that "'"the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude."'" (*People v. Edwards* (2013) 57 Cal.4th 658, 722.) The question posed by defendant's counsel was not so limited, asking whether plaintiff's mother had been convicted of *any* felony, whether or not a crime of moral turpitude. The court did not prohibit defense counsel from rephrasing the question in a manner that focused on potentially relevant information. Instead, defense counsel moved on to other issues. Plaintiff's objection, therefore, was properly sustained, and defendant has demonstrated no error.

## III. DISPOSITION

The order appealed from is affirmed.  Plaintiff shall recover costs incurred on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                          HOLLENHORST
                                                            J.

We concur:


RAMIREZ
                              P.J.

CODRINGTON
                              J.