Filed 3/29/23  Goodman v. Perry CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| NICOLE GOODMAN, | B312424 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20VERO01502) |
| v. | |
| JOHN QUENTIN PERRY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Firdaus F. Dordi, Judge.  Affirmed.

Nicole D. Goodman, in pro. per., for Plaintiff and Appellant.

John Perry, in pro. per., for Defendant and Respondent.

\* \* \* \* \* \*

Nicole Goodman appeals from the trial court's denial of her request for a domestic violence restraining order (DVRO) against respondent John Quentin Perry. Goodman argues that the trial court erred because it failed to consider the totality of the circumstances, failed to consider Perry's alleged violations of the temporary restraining order (TRO), and failed to consider Perry's alleged postfiling abuse.

We find no abuse of discretion in the trial court's denial of Goodman's request for DVRO and affirm the judgment.

## BACKGROUND

Goodman and Perry met in May 2020 in connection with Goodman's online purchase for her son. Perry followed up after the transaction, claiming he wanted to make sure everything was okay with the purchase. Perry held himself out to be an investor, dealer and buyer of numismatic coins, silver, and gold bullion.

Goodman, who owned a valuable coin collection herself, sought Perry's help. In June 2020, a brief sexual relationship developed. At the time, Perry resided in Arizona and Goodman in California. The two met in person only three times, and each time Goodman flew to Arizona. Goodman made no claim that Perry sexually assaulted her or engaged in any physical violence towards her. Goodman asserts that by August 7, 2020, she refused to continue a sexual or romantic relationship with Perry.

Goodman alleged that by the end of July 2020 Perry had control of many of the coins in her coin collection and had not paid for them. She alleged that she became pregnant in June 2020 and as a result of Perry's harassment had a miscarriage on September 24, 2020. Goodman further alleged that Perry used sex to intimidate her and steal her coins. After Goodman

reported the coin theft to the Arizona police, Perry and his wife purportedly harassed Goodman by calling and hanging up, making false claims to the Phoenix police department, and filing two requests for restraining orders against her in Arizona.

Goodman alleged as acts of harassment by Perry in her declaration: threatening to beat up and kill her husband and take her out to the desert; threats to have his wife killed; threats to kill himself; cyber-stalking; hang-up calls; obscene and lewd text messages; and filing the allegedly false injunctions against her in Arizona. Goodman specified that Perry owned several guns and threatened to shoot her husband, his wife and himself.

Perry provided a significantly different description of the facts. He testified that it was he who ended the relationship because Goodman was using him and trying to get services from him. After he terminated the relationship, Goodman became upset because she already had purchased a plane ticket to fly to Arizona to see him. She demanded Perry pay for the ticket or she would tell everyone that she was pregnant. Perry testified he never threatened or hurt Goodman and never threatened to hurt her husband. After he ended the affair, Goodman continued to threaten that she would release illicit photos from their affair. Eventually Goodman contacted Perry's wife and told her what they had done and threatened his wife. Both Perry and his wife filed restraining orders against Goodman in Arizona. Perry claimed Goodman was blackmailing him. The last time Perry contacted Goodman was on September 17, 2020, when either he or his wife wrote Goodman a cease and desist letter demanding that she leave them alone. Perry was residing in Arizona and had no plans to travel to California.

3

When confronted with an e-mail apparently from Perry to Goodman threatening her husband, Perry denied having written it. Rather, Goodman had set up that e-mail address for him and knew the password. Goodman had also sent him a cell phone so they would not get caught, as Perry's wife periodically looked at his cell phone.

On October 19, 2020, Goodman filed her request for DVRO against Perry. Based on the allegations of abuse, the trial court issued a temporary restraining order (TRO) on October 19, 2020. The TRO protected Goodman, her son, and her husband. The hearing was set for November 9, 2020. The TRO included a firearm restriction requiring Perry to surrender all firearms and ammunition in his possession within 24 hours. The TRO also granted Goodman's request for return of her coin collection, which she asserted at the hearing was not done. Goodman asked the court to order Perry to return her property.

The hearing was continued to March 3, 2021. At the conclusion of the hearing, the court ruled that Goodman failed to meet her burden of proof and dismissed with prejudice her request for a DVRO. The court specified that "there were credibility issues with both [Goodman's] and [Perry's] credibility." The court found that the testimony suggested that "[Perry] sought to end the relationship in August. [Goodman] pushed the relationship forward. [Goodman] potentially threatened to have their affair be made public, and then did, in fact, do so based on [Perry's] testimony which I found to be credible with respect to the email that was sent to his wife and how that would impact him in this situation." The court found that Perry's e-mail suggesting that he would kill himself was not threatening to Goodman in the context in which it was written, because the

4

e-mail noted that he was going to get antidepressants and anxiety medications so that he could function. The court also found Perry's testimony to be credible with respect to his written request that Goodman cease and desist and in seeking a restraining order for her conduct. The court viewed with distrust Goodman's oral testimony that an e-mail communication from a stranger actually came from Perry and that Perry sent people who parked in a car outside of Goodman's house. The court noted that an August 16, 2020 e-mail appeared to show that Perry was the one who wanted to end the relationship.

The court found that Goodman had failed to demonstrate by a preponderance of evidence that she continued to be threatened by Perry such that a restraining order was necessary. The TRO was dissolved and Goodman's petition denied with prejudice.

Goodman filed a timely notice of appeal on March 26, 2021.

## DISCUSSION

### I. Standard of review

A trial court's decision to grant or deny a restraining order is reviewed for abuse of discretion. (*Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."'" (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.)

A trial court's discretion is not unfettered. "'"[A] discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed

discretion and is subject to reversal.'"'" (*In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 933.)

We review the trial court's factual findings for substantial evidence. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822.) Under this standard, "[o]ur sole inquiry is 'whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted,' supporting the court's finding." (*Ibid.*) "'We must accept as true all evidence . . . tending to establish the correctness of the trial court's findings . . . , resolving every conflict in favor of the judgment.'" (*Id.* at p. 823.) "[T]he testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221.) We do not revisit the trial court's credibility determinations, as credibility is in the exclusive province of the trier of fact. (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 786 ["'[I]t is the trial court's role to assess the credibility of the various witnesses [and] to weigh the evidence to resolve the conflicts in the evidence.'"].)

Where the parties do not fully develop a factual issue below, we may exercise our discretion to decline to consider it on appeal. (*Bikkina v. Mahadevan* (2015) 241 Cal.App.4th 70, 93, disapproved on other grounds as stated in *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1248.)

## II. No abuse of discretion in denial of the petition for DVRO

The trial court determined that Goodman failed to meet her burden of proving by a preponderance of the evidence that Perry had engaged in a past act or acts of abuse. (Fam. Code, § 6300, subd. (a); *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th

6

106, 116.)  Goodman has failed to show an abuse of the trial court's discretion in denying the DVRO.

The court determined that there were credibility issues with both Goodman and Perry.  With respect to Perry's denial of sending a June 29, 2020 e-mail suggesting that he could kill Goodman's husband, the trial court found him not credible.  However, the court did not find the e-mail communication to provide a basis for a restraining order in the context of this case.  The court noted, "The nature of the communication that was being had with respect to [Goodman] at the time was, you know, about her husband being alleged a monster by her own words and [Perry] and [Goodman] having a relationship thereafter . . . ."  The court did not find credible Goodman's testimony that she continued the relationship with Perry for fear of losing her coins.

The court also discussed an August 12, 2020 e-mail from Perry to Goodman in which he threatened to shoot himself and stated, "I'm going to get on some anti depressants and some anxiety meds.  I can't function.  I"m afraid I will kill myself. [*Sic*.]"  The court noted that the e-mail was sent shortly after Perry found out that Goodman was potentially pregnant with his child.  The court stated, "he's not threatening to hurt her in any way."  While the court noted that self-harm could be a basis for abuse, it found that in the context of this case it was not.  In addition, "[I]t's conditional. And he says he's going to get some antidepressants and some anxiety meds . . . ."  The court found that Perry was "dealing out loud with the news that he's recently found out.  I don't believe that's a basis for a restraining order."

The court then noted that the testimony suggested that Perry was the one who sought to end the relationship in August.  The court found Perry's testimony credible on that issue.  The

court relied on an e-mail dated August 16, 2020, in which Perry indicated he wanted to end the relationship "cordially" and would be "happy to help you sell your coins in any way that I can from here." Perry stated, "I really like you but finally realized (what you have been telling me all along) that I need to put my family first."[1]

The court also found credible Perry's testimony with respect to making a cease and desist request of Goodman and seeking a restraining order against her.

The court viewed with distrust Goodman's allegations that Perry had sent an e-mail from a different e-mail address and had sent men to sit in a car outside of her home.

We do not revisit the trial court's credibility determinations. (*Nevarez v. Tonna, supra*, 227 Cal.App.4th at p. 786 ["'We have no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses or to resolve conflicts in the evidence or the reasonable inferences which may be drawn from that evidence.'"].) Although there was conflicting testimony on various aspects of the brief relationship, we accept the trial court's resolution of these conflicts. The substantial evidence described above supports the trial court's factual findings that Perry had not engaged in past acts of abuse, and a DVRO was not warranted.

Goodman argues that the trial court erred in failing to consider all forms of abuse alleged. She points out that the

---

[1]    We reject Goodman's suggestion that the August 16, 2020 e-mail was not entered into evidence. While rendering its decision, the court referred to the August 16, 2020 e-mail and specified that it "is entered into evidence." There was no objection.

Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.) includes numerous behaviors, including "disturbing the peace of the other party." (Fam. Code, § 6320, subd. (a); see § 6203, subd. (a)(4).) She argues that the DVPA's definition of abuse should "be broadly construed in order to accomplish [its] purpose." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.) Goodman argues that the trial court failed to evaluate the totality of circumstances and failed to consider whether Perry's actions disturbed her peace. (Citing *In re Marriage of F.M. & M.M, supra*, 65 Cal.App.5th at p. 119.) Goodman argues that, had the court considered all of Perry's conduct, it should have determined that Goodman established abuse sufficient to support the issuance of a DVRO.

The trial court was not bound to adopt Goodman's view of the evidence. The record shows that the court carefully considered all of the evidence, made determinations of credibility, and came to the reasonable conclusion that a DVRO was not warranted. While we acknowledge that Goodman has a different perspective, we may not re-evaluate the evidence. (*Sabbah v. Sabbah, supra*, 151 Cal.App.4th at p. 822.)

Goodman argues that the trial court limited its evaluation to only corroborated evidence at the hearing, and declined to consider her declaration. On the pages of the record Goodman cites, there is no indication that the trial court declined to consider her declaration. The trial court did make clear that it had serious concerns about the credibility of both parties. The trial court's determination as to the specific evidence it would rely upon for credibility reasons is not a determination that this court may reassess. (*Nevarez v. Tonna, supra*, 227 Cal.App.4th at p. 786.)

9

Goodman insists that evidence that Perry threatened her husband was uncontradicted because the trial court found Perry's denial of sending the e-mail not credible. Goodman insists that the court erred in finding that the threat was not a basis for a restraining order in the context of this case. The court reasoned that Goodman had been telling Perry that her husband was a monster and that Goodman continued the relationship after this e-mail, thus demonstrating that she did not feel threatened. We note that the trial court found Goodman's testimony that she continued the relationship in order to get her coins back to lack credibility.

Contrary to Goodman's position, the trial court's determination was within the bounds of reason considering the totality of circumstances. The evidence showed that Goodman continued to engage with Perry after the threatening e-mail and thereafter Perry was the one who sought to cut off the relationship. The court was not required to find this e-mail—or this e-mail considered together with Perry's threat to kill himself—to be an act of abuse. (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702 [trial court "has broad discretion in determining whether to grant a petition for a restraining order" under the statutory scheme].) Instead, the trial court was required to exercise its judgment to determine whether a restraining order could help prevent abuse or threats from occurring in the future. (See Fam. Code, §§ 6220, 6300.)

We find no abuse of discretion in the trial court's determination that the threats did not amount to abuse sufficient to warrant a DVRO in this case. The trial court was in the best position to evaluate the evidence before it, and it did not exceed the bounds of reason in this case.

10

## III. Consideration of TRO violations

Goodman argues that the trial court erred in failing to consider Perry's violations of the TRO. Goodman cites *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602, as support for her position that violations of the TRO may constitute disturbing the peace of the other party and justify issuance of a DVRO. Goodman alleges Perry violated the TRO by failing to relinquish his firearm and failing to return her coin collection.

Perry's counsel stated in court that Perry is a gun owner and that "[h]e does own a single gun." Counsel also represented that Perry surrendered the gun, and counsel had proof of the surrender. Counsel indicated that "[i]t was surrendered at his local police station." Goodman provides no citation to the record suggesting that she objected to Perry's counsel making this representation to the court. Thus, her objection on appeal is forfeited. (*People v. Fuiava* (2012) 53 Cal.4th 622, 673.) The court was not required to accept Goodman's statement that "[Perry] told her that he has more than one, he had several guns." In the face of conflicting evidence, we must defer to the trial court. (*Sabbah v. Sabbah, supra*, 151 Cal.App.4th at p. 822.)

As to the coin collection, Goodman represented that the coins had not been returned, but "there is an active criminal investigation into these coins in Arizona." While the court initially signaled an intent to take up the coins "to that limited extent" of determining a TRO violation, Perry's counsel stated, "the only problem with that is that there's an issue as to whether the coins were even received by my client in the first place and which coins were received by him." Because the coins were not clearly identified, the court felt that the DVRO hearing was not the place to solve the coin issue. The court stated, "That

11

shouldn't even be in this court. That should be in a different court altogether if it's just a return of property issue."

The court's decision to decline to hear the coin issue was appropriate under the circumstances. We note that any determination the trial court might have made could have interfered with a pending criminal investigation. (See *Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, 690 [noting that "when both civil and criminal proceedings arise out of the same or related transactions, an objecting party is generally entitled to a stay of discovery in the civil action until disposition of the criminal matter"].) This is because it is inherently unfair to compel disclosure of a potential criminal defendant's evidence and defenses before trial. (*Ibid.*) These rules apply even when the civil defendant is not yet a criminal defendant, but is threatened with prosecution. (*Ibid.*) Due to the complexity of the facts relating to the coins, and the pending criminal investigation, the trial court properly declined to incorporate the property issue into its decision on the DVRO.

## IV.  Alleged postfiling abuse

Goodman testified at the hearing that Perry continued harassing her through third parties in violation of the TRO. First, she testified that in January 2021, she received a message from a fake Facebook profile seeking a romantic relationship. She explained that her computer forensic software traced it to the same internet protocol address as Perry's. She then testified that a man came to her home in January 2021 leaving a piece of paper with both their names on it. She said the man said he "had a special delivery" for her nine-year-old son. She also testified that there were men parked in a car outside her home surveilling her house.

In rendering its decision, the court acknowledged this testimony.  However, the court found that the testimony lacked credibility.  The court explained its reasoning for finding this testimony to lack credibility:

> "[W]e heard a lot of testimony about . . . confirming IP addresses with respect to . . . communication from a stranger that was sent, . . . people that were parked in a car, all of that.  There's other things that could have corroborated those things that weren't presented like confirming the IP address having come from [Perry's] residence . . .  [¶] But that wasn't presented."

Thus, the court viewed Goodman's testimony regarding these events with distrust.  Goodman asserts that the court improperly rejected her testimony, which constituted "reasonable proof" of prior abusive conduct.  (Citing Fam. Code, § 6300.)  Goodman asserts that "reasonable proof" may consist of testimony from the party requesting the DVRO.  (*In re Marriage of Fregoso & Hernandez, supra*, 5 Cal.App.5th at page 703.)  Goodman cites *In re Marriage of F.M. & M.M., supra,* 65 Cal.App.5th at p. 118 for the proposition that "the DVPA does not impose a heightened standard for specificity, nor does it contain any corroboration requirement."

However, the *F.M. & M.M.* court also noted that "'[a] trier of fact is free to disbelieve a witness . . . if there is any rational ground for doing so.'"  (*In re Marriage of F.M. & M.M., supra*, 65 Cal.App.5th at p. 119.)  In *F.M. & M.M.*, "the trial court did not indicate on the record that mother lacked credibility as a

witness." (*Ibid.*)  Here, in contrast, the trial court noted on the record that it had credibility issues with both parties to this matter.  We may not revisit this credibility determination. (*Nevarez v. Tonna, supra*, 227 Cal.App.4th at p. 786.)  Given the court's credibility concerns, Perry's testimony that he did not commit the acts Goodman alleged he committed through third parties, and the scarcity of evidence connecting those third parties to Perry, the trial court did not abuse its discretion in declining to find those acts to be in violation of the TRO.

## DISPOSITION

The judgment is affirmed.  Each side is to bear his or her own costs of appeal.

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

ASHMANN-GERST, J.

14