Filed 1/15/25  Parrilla v. Devalk CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THOMAS RUSSELL PARRILLA, | |
| Plaintiff and Respondent, | E082525 |
| v. | (Super.Ct.No. CVSW2306029) |
| MARK E. DEVALK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Albert J. Wojcik, Judge.

Affirmed.

Law Offices of David Mayberry and David P. Mayberry for Defendant and

Appellant.

No appearance for Plaintiff and Respondent.

1

Defendant and appellant Mark E. Devalk appeals the grant of a civil harassment restraining order issued against him pursuant to Code of Civil Procedure section 527.6[1] requiring he keep away from plaintiff and respondent Thomas Russell Parrilla, Parrilla's wife, and Parrilla's daughter, for a period of two years expiring on October 19, 2025.

On appeal, Devalk essentially contends the granting of the civil harassment restraining order was not supported by the evidence. Parrilla has not filed a response. We affirm the grant of the civil harassment restraining order.

## PROCEDURAL AND FACTUAL BACKGROUND

Devalk has provided very few of the records from the proceedings below. According to the trial court's register of actions, Parrilla filed a petition for a civil harassment protection order (petition) against Devalk on July 28, 2023, although Devalk contends it was filed on July 31, 2023. A temporary restraining order was granted in favor of Parrilla on July 31, 2023. The register of actions does not reflect the filing of a written opposition to the petition by Devalk.

The hearing on the permanent restraining order was held on October 19, 2023. The trial court inquired of Parrilla, who was in pro. per., "[I]s all the information in your petition true and correct to the best of your knowledge?" Parrilla responded, "Yes, it is, your Honor." The trial court then asked, "And you have a whole big list of things that go along with things happening and talking about threats being made, certain type of language that's being used at you, some personal threats. [¶] Is everything in your

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

petition true and correct to the best of your knowledge?" Parrilla responded, "Yes, it is." The trial court then stated it was going to turn the matter over to counsel for Devalk for cross-examination. The trial court noted that Devalk had the petition and knew what Parrilla was alleging. Parrilla would be given time later to explain his petition, but the trial court wanted to begin with Devalk. Parrilla did not have any witnesses to present.

Devalk called Parrilla as a witness. Parrilla lived in Murrieta in the same apartment complex as Devalk. Parrilla was a law enforcement officer. On July 27, 2023, Parrilla was walking his dog and had an encounter with Devalk. Parrilla observed Devalk across the street with two other people. They were drinking alcohol and there were beer cans on the trunk of a nearby car. Devalk said to Parrilla, " 'What's good?' " Parrilla responded, " 'I'm good.' " Devalk responded " 'Okay. That's good,' " and Parrilla told him, " 'God bless you.' " Parrilla became concerned with Devalk based on his mannerisms and Devalk talking to him. He had experience with gangs and thought that Devalk might want to challenge him to a fight. Counsel asked Parrilla if he was a gang officer based on the petition using gang "jargon." Parrilla was not a gang officer. Parrilla was asked if he was "threatened at that point to some extent?" Parrilla responded, "Not threatened but, again, like I said, a heightened sense of awareness with his demeanor."

Parrilla continued walking his dog and came back. When Parrilla returned, Devalk and his friends were in the middle of the street. Devalk said to Parrilla, " 'What's up? Where are you from, homes' " which Parrilla again took as a challenge. Parrilla approached Devalk to talk to him to try and diffuse the situation. Parrilla testified when

3

he went over to Devalk, "that's when [Devalk] got aggressive and started cursing at me saying 'F you,' that he knows who I am." Parrilla responded that he was a man of God and Devalk responded "F God." Parrilla told him he was sorry that he felt that way but Jesus loved him. Neither of them touched each other during the exchange.

Parrilla was asked by counsel, "Did you feel in some way at that time threatened by him?" He responded, "Absolutely." He was asked what made him feel threatened. Parrilla stated he had articulated the reasons in the petition, but provided it was when Devalk cursed at him, tensed his muscles and fists, and puffed out his chest.

Parrilla testified that he backed away from Devalk. A woman, later identified as Ashley Valenzuela, got between them and held back Devalk. Parrilla sensed Devalk was coming after him. Valenzuela told Parrilla that Devalk was drunk and had a broken arm. At this point, Parrilla could smell the alcohol on Devalk's breath and could observe that his eyes were glossy.

As Parrilla was backing up, Devalk said " 'I hate Fing cops. I hate you. I am going to show you what I think of cops' " and tried to advance toward Parrilla but Valenzuela held him back. Devalk made a statement that he knew who Parrilla was, he knew Parrilla's family, and that Parrilla and his family needed to "watch out." Parrilla took that as a threat of future violence. He was afraid for himself, his daughter, and his wife. Parrilla never told Devalk that he was a law enforcement officer or that he had a gun. He did tell Devalk that Devalk needed to stay away from him and his family or he was going to have "legal problems."

4

After this incident, Parrilla, his wife, and daughter no longer walked in the area by Devalk's residence unless they first checked if he was outside. After this interaction, there were further incidents that he and his family interpreted as forms of intimidation. Parrilla testified that whenever he and his family were outside their apartment, they observed Devalk staring at them. On September 11, 2023, his wife was walking their dog and Devalk appeared in the middle of the street and stared at her. She walked the other way to avoid him. On September 16, 2023, Parrilla was in front of his apartment welcoming guests to a birthday party. Devalk stared at him and his guests the entire time until they went inside. On September 21, 2023, Parrilla was in his backyard and could see over the fence into the street. Devalk was intently staring in his direction. There were several other times that Parrilla was outside and Devalk just stared at him. Parrilla had photographs taken from his backyard and the second story of his apartment showing Devalk in the street, staring at him.

Devalk testified on his own behalf. He denied ever being a gang member. He never threatened any physical harm to Parrilla or Parrilla's family. On July 27 he had a broken collarbone and was off work. He denied he was intoxicated on that day; he drank only one or two beers. That night, he was with Valenzuela and his neighbor when they observed Parrilla across the street walking his dog. Parrilla was the first one to talk and asked, " 'Are you good?' " Devalk responded, " 'I'm good,' " and Parrilla responded, " 'That's good.' " Devalk did not think this was gang "jargon." Parrilla then crossed the street toward him and said, " 'It seems to me you have a staring problem,' " and Devalk

5

responded, " 'Seems to me the same thing.' " Devalk believed that Parrilla was trying to start trouble with him.

Parrilla made comments about God and Jesus. Devalk denied that he tried to attack Parrilla. Valenzuela stepped between them because Parrilla kept advancing toward Devalk. She kept telling Parrilla about Devalk's broken collarbone and to leave him alone. Parrilla was being rude and Valenzuela asked him to walk away and leave them alone. Parrilla did make a comment to Devalk that he was a police officer and he had a gun. Parrilla told Devalk that if he ever bothered his family he was going to have "problems in more than one way."

On cross-examination, Devalk admitted that he and Parrilla had not met prior to July 27. Devalk insisted that Parrilla told him he was a police officer and was "always packing heat." He denied he ever said he hated cops or cursed at Parrilla. Devalk felt Parrilla was being aggressive by coming closer to him.

Valenzuela testified she was with Devalk on the night of July 27. Valenzuela was Devalk's girlfriend and he also was the father of her child. She never heard Devalk threaten Parrilla, his wife, or daughter on that night. Devalk was not drunk. She stood between Parrilla and Devalk because Parrilla was inching closer to Devalk during the conversation and she was concerned because they were arguing. Devalk had a broken collarbone and could not fight anyone.

Parrilla was allowed to cross-examine Valenzuela. She insisted that Parrilla initiated the conversation with Devalk. She recalled that Parrilla approached Devalk and said Devalk had a staring problem. Valenzuela insisted the incident occurred while she

6

and Devalk were still standing by their car and not in the middle of the street. She denied she told Parrilla that Devalk was drunk. She thought Parrilla was going to harm Devalk because he kept getting closer and she had asked him to leave. She could not recall what was said during the argument. She never heard Parrilla say he was a police officer. She claimed that Parrilla said he was always "packing."

The trial court indicated that it did not need to hear closing arguments. The trial court ruled, "What we have are a couple statements triggered to the family by [Parrilla], such as 'what's up,' 'what's good,' things like that. Maybe innocuous statements, maybe not. I don't think necessarily those are statements. But after walking away, [Parrilla] came back, approached [Devalk]; and after some conversation, those statements and gestures made by [Devalk]—according to [Parrilla]—were interpreted by [Devalk] as signs of hostile demeanor, puffed out chest, clenched fist, advancing toward [Parrilla] to the point where [Valenzuela] had to intervene to defend them apparently knowing he's in law enforcement. 'I know who you are,' 'I'm going to show you what I think of cops,' statements like that are attributed to [Devalk]."

The trial court continued, "There were later some photographs taken after the incident—so they don't help with the incident—but one might interpret what [Devalk] was doing in those photographs as mad dogging. To me, it is not unreasonable to assume that [Parrilla] would take this behavior as criminal threats of violence, so I am finding by the standard that must be applied by clear and convincing evidence." The trial court granted the civil harassment restraining order for Devalk to stay at least 50 yards away

7

from Parrilla and "the persons indicated in paragraph three, children's schools, work place, vehicle."

Devalk filed his notice of appeal on November 3, 2023.

## DISCUSSION

Devalk contends the factual findings made by the trial court did not support the grant of the civil harassment restraining order. He insists that based on his and Valenzuela's testimony, the trial court unreasonably concluded that Devalk made a threat of unlawful violence against Parrilla. Further, Devalk's actions did not constitute a course of conduct supporting the civil harassment order under section 527.6.

" 'Section 527.6 was enacted "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution." [Citations.] It does so by providing expedited injunctive relief to victims of harassment.' " (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1227, disapproved on another ground in *Conservatorship v. O.B.* (2020) 9 Cal.5th 989.) Section 527.6, subdivision (a)(1), provides, "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." Section 527.6, subdivision (b)(3), defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." The statute defines course of

8

conduct as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email. Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6, subd. (b)(1).) The statute further defines " 'Credible threat of violence' [as] a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).)

"[A] single act of harassment alone cannot justify a restraining order. An injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 499 (*Harris*).)

" '[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof.' [Citation.] 'Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in

9

the evidence, and drawn reasonable inferences from the evidence.' " (*Hansen v. Volkov* (2023) 96 Cal.App.5th 94, 104.) When ascertaining the reasonable probability that harassment will be repeated in the future, it " 'rests upon the nature of the unlawful violent act evaluated in the light of the relevant surrounding circumstances of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm.' " (*Harris*, *supra*, 248 Cal.App.4th at pp. 499-500.)

Initially, Devalk did not provide the petition to this court. On appeal, " 'A judgment or order of the lower court is *presumed correct*.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *Gee v. American Realty & Construction Inc.* (2002) 99 Cal.App.4th 1412, 1416.) On appeal, a "plaintiff has the burden of providing an adequate record." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.) " 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609, fn. omitted.)

It does appear to this court that Parrilla detailed the incidents supporting the civil harassment restraining order in his petition. The trial court asked on the record if the statements in the petition were true, and Parrilla attested they were true. While the petition is missing from the record, it does not appear that the trial court relied solely on the allegations in the petition in determining whether to grant the civil harassment restraining order. Instead, it appears the trial court relied predominantly on the testimony at the hearing. As such, rather than find that Devalk has failed to meet his burden of

10

providing an adequate record on appeal, we will review the evidence at the hearing to determine whether it supported the issuance of the civil harassment restraining order.

There was substantial evidence of a credible threat of violence within the meaning of section 527.6 to support the issuance of the civil harassment restraining order.[2] Devalk essentially is asking this court to reweigh the credibility of witnesses. " '[I]t is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.' " (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300.) "[W]e must defer to the trial court's determinations of credibility." (*Harris*, *supra*, 248 Cal.App.4th at p. 498.) "The testimony of a single witness may provide sufficient evidence." (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 823.)

The trial court credited Parrilla's testimony that Devalk started the interaction between Devalk and Parrilla. The trial court also believed Parrilla that Devalk had a hostile demeanor by puffing out his chest and balling up his fists while approaching him. Valenzuela had to intervene. It also found that Devalk knew Parrilla was a law enforcement officer and threatened to show Parrilla what he thought about cops. The trial court reasonably determined that this was a credible threat of violence.

Moreover, the trial court impliedly determined that the harassment would likely recur in the future. (See *Harris*, *supra*, 248 Cal.App.4th at p. 500 ["[W]e must presume

---

[2] Devalk on appeal erroneously states that the factor "credible threat of violence" is not relevant. The trial court specifically relied on criminal threats of violence in its ruling.

11

that the trial court followed the applicable law and understood that it was required to find that future harm was reasonably probable"].)[3]  The trial court noted that after the incident, Devalk continued to "mad dog" Parrilla by staring at him.  The trial court found that Parrilla could reasonably interpret these actions as credible threats of violence.  There was sufficient evidence to support the trial court's implied finding that harassment was likely to recur in the future absent the civil harassment restraining order.  Substantial evidence supports the issuance of the civil harassment restraining order.

## DISPOSITION

The civil harassment restraining order issued on October 19, 2023, is affirmed in full.  Appellant is to bear his own costs on appeal.[4]

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER                               
J.

We concur:

McKINSTER                     
Acting P. J.

MENETREZ                     
J.

---

[3] Devalk simply states in his appellant's opening brief that there was no implied finding of an ongoing threat of future harm, with no argument or legal authority.  There clearly was a threat of ongoing harm.

[4] Parrilla has not made an appearance at this court.  Therefore, we do not award him costs on appeal.